**SO ORDERED.**

**SIGNED this 28 day of September,2016.**

*Stephani W. Humrickhouse*

**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **AMERICAN AMBULETTE & AMBULANCE SERVICE, INC., COASTLINE CARE, INC., EASTERN SHORE ACQUISITION CORP., EASTERN SHORE AMBULANCE, INC., MARMAC TRANSPORTATION SERVICES, INC., and TRANSMED, LLC** | **13-07673-8-SWH** |
| **DEBTORS** | |
| | |
| **ALGERNON L. BUTLER, as TRUSTEE for DEBTORS** | |
| | **ADVERSARY PROCEEDING NO.** |
| **Plaintiff** | **15-00043-8-SWH-AP** |
| **v.** | |
| **ENHANCED EQUITY FUND II, LP, EEF PARTNERS II, LLC, AMBULANCE HOLDINGS, LLC, MALCOLM KOSTUCHENKO, ANDREW PAUL, SAMARTH CHANDRA, BRYAN GIBSON, STEVE BLACKBURN, ROBERT JEWELL, PRIORITY AMBULANCE, LLC, and SHOALS AMBULANCE, LLC** | |
| **Defendants.** | |

## ORDER REGARDING MOTION TO DISMISS CLAIMS

The matter before the court is the motion, filed jointly by the defendants, to dismiss certain claims for relief in this adversary proceeding. A hearing took place in Wilmington, North Carolina on March 8, 2016. Supplemental briefs were filed by the plaintiff on April 5, 2016, and by the defendants on April 26, 2016. For the reasons that follow, the motion will be granted in part and denied in part.

On December 11, 2013, petitions for relief under chapter 7 of the Bankruptcy Code were filed by American Ambulette & Ambulance Service, Inc., Coastline Care, Inc., Eastern Shore Acquisition Corp., Eastern Shore Ambulance, Inc., Marmac Transportation Services, Inc., and Transmed, LLC (collectively, the "Debtors"). Based on the Debtors' common ownership and affiliations, the cases were administratively consolidated on April 2, 2015, with American Ambulette & Ambulance Service, Inc. designated as the lead case. On November 13, 2015, the chapter 7 trustee, Algernon L. Butler, III, filed the complaint initiating this adversary proceeding against Enhanced Equity Fund II, LP, EEF Partners II, LLC, Ambulance Holdings, LLC, Malcolm Kostuchenko, Andrew Paul, Samarth Chandra, Bryan Gibson, Steve Blackburn, Robert Jewell, Priority Ambulance, LLC, and Shoals Ambulance, LLC (collectively, the "Defendants"). The complaint contains sixteen causes of action arising from the Defendants' development of new business ventures, which the trustee alleges caused the Debtors' financial demise and forced them into bankruptcy.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, the Defendants seek dismissal as to nine of the sixteen claims for relief, contending that the trustee fails to state claims for which relief can be granted. See Fed. R. Civ. Pro. 12(b)(6); Fed. R. Bankr. Pro. 7012(b). To

2

survive a Rule 12(b)(6) motion, the factual allegations of a complaint must "be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted); see also Angell v. BER CARE, Inc.(In re Careamerica, Inc.), 409 B.R. 737 (Bankr. E.D.N.C. July 23, 2009) (setting out a detailed analysis of Twombly and Iqbal). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft, 556 U.S. at 678-79; see also E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175 (4th Cir. 2000). Significantly, while the truth of the *facts* is assumed, the court is not bound by "legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., 213 F.3d at 180.

For ease of reference, the trustee's claims for relief are set out in the chart below. The Defendants seek to dismiss the fourth, fifth, seventh, eighth, eleventh, twelfth, thirteenth, fourteenth, and sixteenth claims (denoted in bold font):

| Claim | Basis for Relief | Defendants Subject to Claim |
|---|---|---|
| First Claim | Breach of Duty of Care to Debtors and their Creditors | Paul, Chandra, Gibson, Blackburn, Jewell |
| Second Claim | Breach of Duty of Loyalty to Debtors and their Creditors | Paul, Chandra, Gibson, Blackburn, Jewell |
| Third Claim | Misappropriation of Corporate Opportunities | Paul, Chandra, Gibson, Blackburn, Jewell |

| | | |
|---|---|---|
| **Fourth Claim** | **Aiding and Abetting Breaches of Fiduciary Duties, Misappropriation of Corporate Opportunities, Conversion, and Fraudulent Transfers** | **EEF, EEF Partners, Paul, Kostuchenko** |
| **Fifth Claim** | **Respondeat Superior** | **EEF, EEF Partners** |
| Sixth Claim | Conversion | Paul, Chandra, Gibson, Blackburn, Jewell, EEF, EEF Partners, Kostuchenko, Priority, Shoals |
| **Seventh Claim** | **Alter Ego, Instrumentality, Veil Piercing** | **Ambulance Holdings, EEF, EEF Partners** |
| **Eighth Claim** | **Fraudulent Transfer – Sections 544, 548, 550, Uniform Fraudulent Transfer Act** | **Priority, Shoals, EEF, EEF Partners, Paul, Chandra, Gibson** |
| Ninth Claim | Unjust Enrichment | EEF, EEF Partners, Chandra, Paul, Kostuchenko, Gibson, Blackburn, Jewell, Priority, Shoals |
| Tenth Claim | Constructive Fraud | Paul, Chandra, Gibson, Blackburn, Jewell |
| **Eleventh Claim** | **Punitive Damages** | **Paul, Chandra, Gibson, Blackburn, Jewell, EEF, EEF Partners, Kostuchenko** |
| **Twelfth Claim** | **Breach of Contract or Agreement to Make Expansion Investment** | **EEF, EEF Partners** |
| **Thirteenth Claim** | **Fraudulent Misrepresentation Regarding Expansion Investment** | **EEF, EEF Partners, Kostuchenko, Chandra, Paul, Gibson, Blackburn, Jewell** |
| **Fourteenth Claim** | **Partnership and Individual Liability** | **EEF Partners, Chandra, Paul, Kostuchenko** |
| Fifteenth Claim | Breach of Employment Agreement | Gibson, Blackburn |
| **Sixteenth Claim** | **Unfair and Deceptive Trade Practices** | **EEF, EEF Partners, Paul, Chandra, Kostuchenko, Gibson, Blackburn, Jewell** |

A.    The Fifth, Eleventh, and Fourteenth Claims for Relief

First, the court will address the Defendants' contention that the fifth, eleventh, and fourteenth

claims for relief are unnecessary and should be dismissed, because they do not represent stand-alone

causes of action.   The claims in question are denoted as follows: respondeat superior, punitive

damages, and partnership/individual liability, respectively.   During the hearing, the trustee indicated

that these claims are not asserted as independent causes of action, but rather were set out separately

to ensure clarity as to the type of relief sought.   The court agrees that neither the fifth, nor the

eleventh, nor the fourteenth claims for relief constitute stand-alone causes of action, and finds that

each of these "claims" shall be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon

which relief can be granted.   Nevertheless, the trustee may still seek relief under these theories, albeit

in connection with the remaining causes of action, because the trustee's prayer for relief includes a

request for punitive damages, as well as damages under the theories of respondeat superior and joint

and several liability, and the prayer for relief will remain undisturbed.   <u>See</u> First Amended

Complaint, Doc. No. 8 at 77-78, ¶¶ 4, 10, and 13.

B.    Fourth Claim for Relief

The trustee's fourth claim for relief is entitled "Aiding and Abetting Breaches of Fiduciary

Duties, Misappropriation of Corporate Opportunities, Conversion, and Fraudulent Transfers," and

is brought against EEF, EEF Partners, Malcolm Kostuchenko, and Andrew Paul.[1]   The Defendants

contend that this cause of action should be dismissed because it is not recognized under North

---

[1] Although eleven defendants are named in the complaint, each claim is asserted against different defendants, and no claim is asserted against all eleven defendants.   For purposes of simplicity, the term "Defendants" within the discussion of each claim will refer to the specific defendants named in that particular cause of action.

5

Carolina law. The trustee, on the other hand, asserts that in order to determine whether an actionable claim has been stated, the court must look to the law of the Debtors' five states of incorporation (Ohio, Delaware, Virginia, South Carolina, and North Carolina), and that the claim is either recognized or constitutes an open question in the majority of those states.

In determining which state's (or states') law applies to this claim, the court must apply North Carolina's choice of law rules, as it is the forum state. _See_ Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co., Inc.), 839 F.2d 203, 205-06 (4th Cir. 1988), cert. denied, 487 U.S. 1236 (1988). The rules vary depending on the character of the claim at hand, i.e., whether the claim relates to torts, contracts, property, etc., or whether it is procedural as opposed to substantive in nature. _See_ The Caper Corp. v. Wells Fargo Bank, N.A., 578 Fed. Appx. 276, 280 (4th Cir. 2014).

1.    Aiding and Abetting Breach of Fiduciary Duty

Beginning with the claim of aiding and abetting breaches of fiduciary duties, the Defendants assert that the traditional conflicts of law rule applicable to matters affecting substantial rights of the parties is the doctrine of _lex loci_, "the law of the situs of the claim." Boudreau v. Baughman, 322 N.C. 331, 335 (N.C. 1988). The Defendants further assert that this is a tort claim, and therefore the situs of the claim is the state where the injury occurred. According to the Defendants, a company's headquarters is the place where an economic injury occurs, and because the Debtors are headquartered in Wilmington, North Carolina, the court should apply North Carolina law to this claim.

The trustee contends, however, that the traditional _lex loci_ rule does not apply here because the claim of aiding and abetting a breach of fiduciary duty involves a corporation's internal affairs, and such claims are treated differently. According to the trustee, the applicable choice of law rule

is the internal affairs doctrine, "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." Bluebird Corp. v. Aubin, 188 N.C. App. 671, 680, 657 S.E. 2d 55, 63 (2008) (citing Edgar v. MITE Corp., 457 U.S. 624, 645 (1982)). Under this doctrine, the substantive law of a corporation's state of incorporation governs suits involving its internal affairs. Haberland v. Bulkeley, 896 F. Supp. 2d 410, 420 (E.D.N.C. 2012). The trustee further asserts that although North Carolina courts have not determined whether the internal affairs doctrine should apply to a claim for *aiding and abetting* a breach of fiduciary duty, it has applied the rule to claims for breach of fiduciary duty, and because the claims would involve many of the same essential elements, the doctrine should apply here.

The parties have not provided and the court has not located a case in which a North Carolina court has considered the applicable choice of law rule in the context of a claim for aiding and abetting a breach of fiduciary duty. In the absence of such guidance, this court must predict how the North Carolina Supreme Court would rule if presented with this issue. See Private Mort. Inv. Servs., Inc. v. Hotel and Club Assocs., Inc., 296 F.3d 308, 312 (4th Cir. 2002). In doing so, this court may consider, among other things, North Carolina appellate and trial court decisions, restatements of the law, treatises, and well-considered *dicta*. See Liberty Mut. Ins. Co. v. Triangle Indus., Inc., 957 F.2d 1153, 1156 (4th Cir. 1992).

According to the Restatement (Second) of Conflict of Laws, several factors are relevant when selecting the applicable rule of law, including "certainty, predictability and uniformity of result." Restatement (Second) of Conflict of Laws § 6 (1971). Although North Carolina courts may

not have determined conflicts of laws issues in the context of claims of *aiding and abetting* breaches of fiduciary duty, the courts have considered conflicts rules applicable to basic breach of fiduciary duty claims. Based upon its review of those cases, the court has determined that the most effective way to ensure certainty, predictability, and uniformity of the outcome of choice of law decisions to the issues at bar is to apply the internal affairs doctrine, which North Carolina courts have applied to breach of fiduciary duty claims. See, e.g., Tong v. Dunn, No. 11 CVS 1522, 2016 WL 3944092 (N.C. Super. Ct. July 8, 2016) (noting that pursuant to the internal affairs doctrine, the law of the subject corporation's state of incorporation governs the substantive elements of breach of fiduciary duty claims against a subject corporation's former directors); Strougo v. North State Bancorp, No. 15 CVS 14696, 2016 WL 615709 (N.C. Super. Ct. Feb. 16, 2016) (finding, where a complaint "attack[ed] the exercise of fiduciary duties owed by [a corporation's] directors," that under the internal-affairs doctrine, such claims must be determined under the law of the state of incorporation); Stec v. Fuzion Inv. Capital, LLC, No. 11 CVS 4241, 2012 WL 1524487 (N.C. Super. Ct. Apr. 30, 2012) (treating a claim for usurpation of corporate opportunities as if it were a claim for breach of fiduciary duty, and applying the internal affairs doctrine to determine the claim).[2]

Nevertheless, the Defendants, while acknowledging that the internal affairs doctrine applies to claims for breach of fiduciary duty, argue that courts outside of North Carolina have treated claims for aiding and abetting breaches of fiduciary duty as tort claims and apply the *lex loci* doctrine

---

[2] The internal affairs doctrine has also been applied by federal courts interpreting North Carolina's choice of law rules when faced with breach of fiduciary duty claims. See Angell v. Accugenomics, Inc. (In re Gene Express, Inc.), Adv. Pro. No. 12-00284-8-JRL, 2013 WL 1687729 (Bankr. E.D.N.C. Apr. 18, 2013) (applying the internal affairs doctrine to a claim for breach of fiduciary duty in the context of a motion to dismiss an adversary proceeding); Haberland v. Bulkeley, 896 F. Supp. 2d 410 (E.D.N.C. 2012) (applying the internal affairs doctrine in considering a motion to dismiss various claims, including breach of fiduciary duty).

instead.    However,  the  cases  the  Defendants  rely  upon  involved  corporate  outsiders  and  non-fiduciaries.    Here,  the  Defendants  are  not  typical  third  parties,  in  that  each  has  a  former  or  current connection to the Debtors.  For example, Andrew Paul was a director of the Debtors in at least 2013, and is a general partner of EEF and a member of EEF Partners, both of which are Defendants subject to this claim.    Further, the general substance of the claim is that EEF and EEF Partners controlled the Debtors in part by placing their own representatives as the majority on the Debtors' boards of directors, taking actions for their own benefit rather than that of the Debtors.    Based on the extent to which the Defendants are or have previously been "bound up" in the Debtors' internal affairs, the court  remains  unpersuaded  that  applying  the  *lex loci*  doctrine  would  be  appropriate  in  this  case. Upon consideration of North Carolina case law and the Restatement (Second) of Conflict of Laws, this court finds it reasonable to predict that the North Carolina Supreme Court would apply the internal affairs doctrine to the aiding and abetting breach of fiduciary duty claim at issue.

Having  determined  that  the  internal  affairs  doctrine  applies  to  the  claim  for  aiding  and abetting breach of fiduciary duty, the court must apply the law of each Debtor's state of incorporation in considering whether the claim should stand as asserted by each respective debtor.  The Debtors' states of incorporation are as follows:

| Debtor | State of Incorporation |
|---|---|
| American Ambulette & Ambulance Service, Inc. | Ohio |
| Coastline Care, Inc. | North Carolina |
| Eastern Shore Acquisition Corp. | Delaware |
| Eastern Shore Ambulance, Inc. | Virginia |
| Marmac Transportation Services, Inc. | Virginia |

| Transmed, LLC | South Carolina |

Thus, the court must analyze the laws of the following five states:

      a.    Ohio

Beginning with the law of the state of Ohio, which applies to the claim for aiding and abetting breach of fiduciary duty as asserted by American Ambulette & Ambulance Service, Inc. ("AAA"), the parties agree that Ohio courts do not recognize this claim.  See DeVries Dairy, LLC v. White Eagle Coop. Ass'n, Inc., 974 N.E. 2d 1194 (Ohio 2012) (holding that Ohio does not recognize a cause of action for tortious acts in concert under the Restatement (Second) of Torts § 876); Sacksteder v. Senney, No. 24993, 2012-Ohio-4452 (Ohio Ct. App. Sept. 28, 2012) (holding, based on DeVries, that Ohio does not recognize a cause of action based on participation in the direct actor's breach of fiduciary duty).  The court will therefore dismiss AAA's claim for aiding and abetting breach of fiduciary duty against EEF, EEF Partners, Paul and Kostuchenko, as it is not currently a recognized claim under Ohio law.

      b.    North Carolina

Next, the court will apply North Carolina law in considering the aiding and abetting breach of fiduciary duty claim as raised by Coastline Care, Inc.  Defendants argue that North Carolina does not recognize a claim for aiding and abetting breach of fiduciary duty, basing their argument on federal district court decisions interpreting North Carolina state court decisions.  The trustee, on the other hand, contends that the answer to this question has not been finally determined by the courts of North Carolina and therefore remains open.  The court has not found any North Carolina Supreme Court case considering a claim for aiding and abetting a breach of fiduciary duty.  Thus, the court

is again in the position of predicting how the North Carolina Supreme Court would rule if faced with the issue at hand.

Upon reviewing numerous decisions of North Carolina's Court of Appeals and Superior Courts, the resounding consensus is that whether North Carolina recognizes a claim for aiding and abetting breach of fiduciary duty is an open question – neither answered in the affirmative nor in the negative.  See Battleground Veterinary Hosp. v. McGeough, No. 5 CVS 18918, 2007 WL 3071618 (N.C. Super. Ct. Oct. 19, 2007); Regions Bank v. Reg'l Prop. Dev. Corp., No. 7 CVS 12469, 2008 WL 1836657 (N.C. Super. Ct. Apr. 21, 2008); Tong v. Dunn, No. 11 CVS 1522, 2012 WL 944581 (N.C. Super. Ct. Mar. 19, 2012); Land v. Land, 222 N.C. App. 317, 2012 WL 3192605 (N.C. Ct. App. Aug. 7, 2012) (unpublished); Veer Right Mgmt. Grp, Inc. V. Czarnowski Display Serv., Inc., No. 14 CVS 1038, 2015 WL 504977 (N.C. Super. Ct. Feb. 4, 2015); Corwin v. British Am. Tobacco PLC, No. 14 CVS 8130, 2015 WL 4628780 (N.C. Super. Ct. Aug. 4, 2015); Bradshaw v. Maiden, No. 14 CVS 14445, 2015 WL 4720387 (N.C. Super. Ct. Aug. 10, 2015).  This court found only one North Carolina court decision, Bottom v. Bailey, 238 N.C. App. 202, 767 S.E.2d 883 (N.C. Ct. App. Dec. 31, 2014), that appears to lean toward answering the question in the negative, but does not provide a definitive answer.  In Bottom, the court first quotes a federal district court decision, Laws v. Priority Trustee Servs. of NC, LLC, 610 F. Supp. 2d 528, 532 (W.D.N.C. 2009), as follows:

> The court finds that no such cause of action exists in North Carolina. It is undisputed that the Supreme Court of North Carolina has never recognized such a cause of action.  The only North Carolina Court of Appeals decision recognizing such a claim, Blow v. Shaughnessy, 88 N.C. App. 484, 489, 364 S.E.2d 444, 447-48 (1988), involved allegations of securities fraud, and its underlying rationale was eliminated by the United States Supreme Court in Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

Laws, 610 F. Supp. 2d 528, 532.  The court then went on to consider, while stating that it did not "need" to, whether the complaint at issue stated a claim for aiding and abetting breach of fiduciary duty with the "required specificity," and assumed arguendo that the cause of action was still valid in another part of its analysis.  Bottom, 238 N.C. App. At 212, 767 S.E.2d at 889.  Additionally, the Bottom decision was described by a North Carolina court as "expressing doubt that North Carolina recognizes a claim for aiding and abetting breach of fiduciary duty, but affirming the trial court's dismissal of that claim on other grounds."  Corwin, 2015 WL 4628780 at *18.  Moreover, the U.S. District Court for the Eastern District of North Carolina recently cited the Bottom decision for the proposition that the existence of the subject claim remains an open question, noting that the Bottom court "declin[ed] to address whether such claim exists, because [the] complaint failed to include proper allegations in support." Lee v. Certainteed Corp., 123 F. Supp. 3d 780, 797 (E.D.N.C. 2015).

To be sure, the North Carolina cases cited above which conclude that the claim constitutes an open question view the decision in Blow v. Shaughnessy, 88 N.C. App. 484, 489 (1988), (which the Bottom court relied upon), as the reason for doubt as to the viability of the subject claim.  In addition, the Defendants point to federal court decisions dismissing claims such as the one at issue on the basis that North Carolina courts have not recognized such a cause of action.  See Laws, 610 F. Supp. 2d 528 (discussed *supra*); see also Taylor v. Newbold Servs., LLC (In re Newbold Corp.), 2012 WL 5880441 at *5 (Bankr. W.D.N.C. Nov. 20, 2012) (citing Laws); Kastel v. Nuveen Invs., Inc., 2015 U.S. Dist. LEXIS 113250 (M.D.N.C. Aug. 25, 2015) (citing Blow and Laws).[3]  What

---

[3] The court found one additional federal court decision, Bell v. Kaplan, No. 3:14CV352, 2016 U.S. Dist. LEXIS 24408 (W.D.N.C. Feb. 29, 2016), holding "[i]t appears that . . . North Carolina has never recognized this cause of action," with regard to a claim for aiding and abetting breach of fiduciary duty, based on Laws and Tong v. Dunn, No. 11 CVS 1522, 2012 WL 944581 (N.C. Super. Ct. Mar. 19, 2012).

these federal court decisions have in common is that they all rely on the interplay between the Blow

decision and the Supreme Court's ruling in Central Bank of Denver, N.A. v. First Interstate Bank

of Denver, N.A., 511 U.S. 164 (1994), to support their conclusions.

Essentially, in Blow, the North Carolina Court of Appeals recognized a claim for aiding and

abetting a breach of fiduciary duty, observing that such a cause of action had been endorsed in

securities fraud actions based on violations of the Securities Exchange Act of 1934.  Blow, 88 N.C.

App. at 489.  Six years later, the U.S. Supreme Court held in Central Bank that there is no private

cause of action for aiding and abetting violations of the securities laws.  Central Bank, 511 U.S. at

191.  The issue here is whether North Carolina would continue to recognize aider and abettor

liability for breaches of fiduciary duty after Central Bank.  This precise issue was considered in

Equitable Life Assurance Soc'y of the United States v. Am. Bankers Ins. Co., No. 88-535-CIV-5-H,

1995 U.S. Dist. LEXIS 10880 (E.D.N.C. May 12, 1995), and the court concluded, after discussing

in detail these cases as well as the Restatement (Second) of Torts, that:

> [b]ased solely on tort principles, rather than upon the case law
> establishing aider and abettor liability for securities law violations,
> the claim for assisting a breach of fiduciary duty would still survive
> in North Carolina today, even after Central Bank . . . .  The Court in
> Central Bank based its decision primarily, and heavily, on the plain
> language of the Securities and Exchange Act of 1934.  114 S. Ct. at
> 1448.  The Court also examined the express causes of action under
> the securities laws to find that liability for aiding and abetting does
> not exist.  114 S. Ct. at 1449.  Because the concepts of fiduciary duty
> and breaches thereof arise under common law principles, Central
> Bank's reach should not extend outside the statute construed in that
> case.

Equitable Life, 1995 U.S. Dist. LEXIS 10880 at *34, inc. fn 5.  The court in Ivey v. McDaniel (In

re EBW Laser, Inc.), 2008 Bankr. LEXIS 176 (Bankr. M.D.N.C. Apr. 21, 2008) reached the same

conclusion, noting that while the Central Bank decision raises an issue about the precedential value

13

of the <u>Blow</u> decision, "it does not mean that the Court of Appeals of North Carolina or the Supreme Court of North Carolina necessarily would reach a different result regarding the existence of a cause of action for aiding and abetting a breach of fiduciary duty in cases involving claims not derived from the Securities Exchange Act of 1934 or Rule 10b-5." <u>Ivey v. McDaniel</u>, 2008 Bankr. LEXIS 176 at *4.  This court agrees with the reasoning of the <u>Equitable Life</u> and <u>Ivey</u> courts.  The reach of the <u>Central Bank</u> decision should be limited to situations involving violations of securities laws, and <u>Central Bank</u> does not overrule <u>Blow</u> in terms of claims for aiding and abetting breaches of fiduciary duty rooted in common law principles.

Based on the foregoing, this court predicts that the North Carolina Supreme Court would recognize a claim for aiding and abetting breach of fiduciary duty.  Further, the court notes that the Defendants have moved to dismiss this claim solely on the basis of whether it exists, and have not argued that the allegations are insufficient as a matter of law.  The court therefore does not address this issue, and declines to dismiss Coastline Care Inc.'s claim for aiding and abetting breach of fiduciary duty.

c.    <u>Delaware</u>

As to the claim for aiding and abetting breach of fiduciary duty brought by Eastern Shore Acquisition Corporation ("ESAC"), the Defendants concede that this claim is expressly recognized under Delaware law.  <u>See, e.g.</u>, <u>Malpiede v. Townson</u>, 780 A.2d 1075 (Del. 2001).  The court will accordingly deny Defendants' motion to dismiss ESAC's claim for aiding and abetting breach of fiduciary duty.

d.     Virginia

The parties disagree as to whether the claim for aiding and abetting breach of fiduciary duty raised by Eastern Shore Ambulance, Inc. ("ESA") and Marmac Transportation Services, Inc. ("Marmac") exists under Virginia law.  The trustee contends that in Halifax Corp. v. Wachovia Bank, 268 Va. 641, 604 S.E.2d 403 (Va. 2004), the Supreme Court of Virginia recognized the claim. The Defendants describe the Halifax court as refusing to recognize the claim.  In Halifax, the court stated that the trial court had assumed,

> arguendo, that Virginia recognizes a cause of action for aiding and abetting a breach of fiduciary duty.  The trial court concluded, however, that Halifax had failed to allege sufficient facts to state such a claim.  We will make the same assumption and reach the same conclusion.

Halifax, 268 Va. at 659-60, 604 S.E.2d at 411-12 (internal quotations omitted).  This court therefore interprets Halifax as falling somewhere in the middle of claim recognition – the court neither expressly recognized nor rejected the claim.  Nevertheless, the court did engage in a full analysis of the claim, discussing each element at length, before reaching its ultimate conclusion that the allegations were insufficient to state a claim.  Although little case law exists regarding this type of claim in the state of Virginia, it does appear that such a claim has been recognized, at least on occasion, in the lower courts.  See Best Med. Int'l, Inc. v. Wittmer, 73 Va. Cir. 504 (Va. Cir. Ct. 2007) (citing Halifax's assumption that claim exists and evaluating its elements, drawing a comparison to the Restatement (Second) of Torts; court ultimately determined that the complaint failed to sufficiently establish the claim, but granted leave to amend); see also 21st Century Sys., Inc. v. Perot Sys. Gov't Servs., Inc., 284 Va. 32, 726 S.E.2d 236 (Va. 2012) (evaluating jury's awards

15

in case below on assertions of duplication; notes, although does not reach in substance, lower court's award of monetary damages for aiding and abetting breach of fiduciary duty).

Of the federal courts that have considered this issue, the majority have recognized a claim for aiding and abetting a breach of fiduciary duty under Virginia law.  In an unpublished opinion, the Fourth Circuit held that

> [u]nder Virginia law, one who aids and abets a third party's breach of fiduciary duty may be held liable for providing such assistance. Patteson v. Horsley, 70 Va. (29 Gratt.) 263, 270-71, 273, 276 (1877). The Virginia Supreme Court expressly held in Patteson that constructive notice of a breach of fiduciary duty suffices to hold a third party liable for participation in the breach. Id. at 276; see also W.L. Chase & Co., Inc. v. Norfolk National Bank of Commerce & Trusts, 151 Va. 1040, 145 S.E. 725, 726, 730 (Va. 1928).

Tysons Toyota, Inc. v. Globe Life Ins. Co., No. 93-1359, 1994 U.S. App. LEXIS 36692, *9 (4th Cir. Dec. 29, 1994) (unpublished) (footnote omitted); see also Schnelling v. Crawford (In re James River Coal Co.), 360 B.R. 139, 174 (Bankr. E.D. Va. 2007) ("Aiding and abetting a breach of fiduciary duty is a viable claim under Virginia law.") (citations omitted); AvalonBay Communities, Inc. v. Willden, No. 1:08-CV-777, 2009 U.S. Dist. LEXIS 69118, *34 (E.D. Va. Aug. 7, 2009) ("Virginia law allows a third party to be liable for another party's breach of fiduciary duty when that third party knowingly participated in the breach.") (citing Halifax); St. Paul Fire and Marine Ins. Co. v. Hoskins, No. 5:10CV087, 2012 U.S. Dist. LEXIS 30770, *15 (W.D. Va. Mar. 7, 2012) (same, quoting AvalonBay).[4]  Finally, the court in Alliance Tech. Grp., LLC v. Achieve 1, LLC, No. 3:12CV701-

---

[4] But see Calderon v. Aurora Loan Serv., Inc., No. 1:10CV129, 2010 U.S. Dist. LEXIS 55602, *19-21 (E.D. Va. June 3, 2010) (finding no support for cause of action for aiding and abetting in the context of fraud and dismissing claim); Microstrategy Servs. Corp. v. Openrisk, LLC, No. 1:14CV1244, 2015 U.S. Dist. LEXIS 32719, *8 (E.D. Va. Mar. 17, 2015) (dismissing claim for aiding and abetting breach of fiduciary duty based on Calderon).

HEH, 2013 U.S. Dist. LEXIS 4708 (E.D. Va. Jan. 11, 2013) analyzed, based on Virginia case law, whether a separate aiding and abetting tort exists where it is alleged that one assisted in another's breach of a fiduciary duty, as opposed to holding that actor accountable under a joint tortfeasor theory of liability.  The court concluded that the answer is "not entirely clear" and that even if the claim "is not to be treated as a separate tort, it appears to be a viable alternative theory to secure joint liability," and the court addressed it as such for purposes of a motion to dismiss.  Alliance, 2013 U.S. Dist. LEXIS 4708 at *16-17.

As to the question of whether aiding and abetting liability should stem from an independent cause of action or a joint and several liability theory, the court finds that it is unnecessary to decide how liability might ensue in this case for purposes of the motion to dismiss.  Rather, at this stage the court is tasked with determining whether liability should exist at all for such a claim.  Based on the foregoing case law, this court predicts that the Supreme Court of Virginia would recognize a claim for aiding and abetting a breach of fiduciary duty.  The Halifax court had the opportunity to refuse to recognize the claim, but instead went through an analysis 'assuming arguendo' that the claim exists under Virginia law.  Other courts have interpreted decisions involving aiding and abetting liability in general as recognizing such a claim.  This court therefore declines to dismiss ESA's and Marmac's claims for aiding and abetting breach of fiduciary duty.

e.    South Carolina

The Defendants concede that the claim for aiding and abetting breach of fiduciary duty brought by Transmed, LLC is expressly recognized under South Carolina law.  See, e.g., Future Group II v. Nationsbank, 324 S.C. 89-99, 476 S.E.2d 45, 50 (S.C. 1996) (stating the elements of a claim for aiding and abetting breach of fiduciary duty and applying the same to the claim at hand);

Gordon v. Busbee, 397 S.C. 119, 133, 723 S.E.2d 822, 830 (S.C. Ct. App. 2012) (same); and Simmons v. Danhauer & Assoc., LLC, 477 Fed. Appx. 53 (4th Cir. 2012) (same).  Therefore, the motion to dismiss Transmed, LLC's claims for aiding and abetting breach of fiduciary duty is denied.

   2. Aiding and Abetting Misappropriation of Corporate Opportunities, Conversion, and Fraudulent Transfer

   Although the fourth claim for relief is entitled "Aiding and Abetting Breaches of Fiduciary Duties, Misappropriation of Corporate Opportunities, Conversion, and Fraudulent Transfers," the pleadings focus almost exclusively on aiding and abetting a breach of fiduciary duty, as opposed to aiding and abetting misappropriation of corporate opportunities, conversion, or fraudulent transfers. In the complaint, the trustee separately alleges breaches of fiduciary duty in the first and second claims, and misappropriation of corporate opportunities, conversion, and fraudulent transfer in the third, sixth, and eighth claims, respectively.  The court therefore views this claim as an "umbrella" claim of sorts, where aiding and abetting breach of fiduciary duty is the essence of the claim, with the breach of fiduciary duty allegedly occurring through the Defendants' misappropriation of corporate opportunities, conversion of assets, and performance of fraudulent transfers.  As such, the court adopts and applies its rulings regarding the claim of aiding and abetting breach of fiduciary duty to these "sub-claims."

C. Seventh Claim for Relief

   Turning to the seventh claim for relief, the trustee requests that the court pierce the corporate veil of Defendant Ambulance Holdings, LLC, alleging that it is a mere instrumentality or alter ego of Defendants EEF and EEF Partners (collectively, the "EEF Defendants").  To that end, the trustee asserts that the internal affairs doctrine is the applicable choice of law rule, and that under that doctrine, Delaware law applies to this claim.  The Defendants initially presented arguments under

North Carolina law, but later asserted that the result is the same regardless of whether North Carolina or Delaware law applies, and in their final brief, conducted their analysis assuming that Delaware law applies.

As discussed with regard to the fourth claim, above, this court must apply North Carolina's choice of law rules to determine the law applicable to this claim, as North Carolina is the forum state. However, the choice of law rule applicable to piercing the corporate veil is an "unresolved" issue, according to the North Carolina Court of Appeals. See Strategic Outsourcing, Inc. v. Stacks, 176 N.C. App. 247, 252-53, 625 S.E.2d 800, 804 (N.C. Ct. App. 2006). After conducting its own analysis, this court agrees with and adopts the reasoning in Dassault Falcon Jet Corp. v. Oberflex, Inc., 909 F. Supp. 345, 348-49 (M.D.N.C. 1995), in which a federal court predicted, based on the Restatement (Second) of Conflict of Laws (1971) and case law, that the North Carolina Supreme Court would adopt the internal affairs doctrine and apply the law of the state of incorporation to a veil-piercing claim. As Ambulance Holdings is incorporated in the state of Delaware,[5] this court will apply Delaware law to determine the sufficiency of the trustee's request to pierce Ambulance Holdings' corporate veil.

In this claim, the trustee alleges that EEF owns an 82% interest in Ambulance Holdings, and that the remaining interest is owned by entities affiliated with or created by the EEF Defendants. First Amended Complaint, Doc. No. 8 at ¶¶ 45-46. The trustee further alleges that Ambulance Holdings is not an operating entity; rather, it is a holding company whose only asset is its ownership of AAA and ESAC. Id. at ¶¶ 47-48, 451. The trustee contends that the court should disregard Ambulance Holdings' corporate existence "because it is a mere instrumentality or alter ego of EEF

---

[5] Pl's Memo. of Law in Opp. to Defs' Joint Mot. to Dismiss, Doc. No. 17 at 20.

and EEF Partners, whose sole purpose is to provide a perceived corporate barrier between the FirstMed Entities and EEF and EEF Partners." Id. at ¶ 444. Finally, the trustee contends that representatives of the EEF Defendants comprise the majority of the members of Ambulance Holdings' board of directors, and that any actions, strategies, or decisions undertaken by Ambulance Holdings are controlled by and done for the benefit of the EEF Defendants. The Defendants contend that the trustee's allegations relate to the Debtors, rather than Ambulance Holdings, and therefore the allegations are insufficient to state a claim for veil piercing as to Ambulance Holdings.

Based on Ambulance Holdings' alleged function as a pure "holding" company, the court is mindful of two things: (1) piercing the corporate veil is a significant remedy, not to be granted lightly, and (2) the basic purpose of a court's disregard of an entity's corporate form is to hold shareholders liable for corporate wrongs. See, e.g., Harco Nat'l Ins. Co. v. Green Farms, Inc., No. 1131, 1989 WL 110537, at *6 (Del. Ch. Sept. 19, 1989) (". . . persuading a Delaware court to disregard the corporate entity is a difficult task"); Crosse v. BCBSD, Inc., 836 A.2d 492, 497 (Del. 2003) ("A veil-piercing claim is usually invoked when the shell corporate entity is insolvent and the plaintiff wishes to reach the personal assets of the corporation's stockholders or alter egos."). Under Delaware law, stating a claim under an alter ego theory requires establishing that "the corporate structure cause[d] fraud or [a] similar injustice, such that the corporation is essentially a sham, existing "for no other purpose than as a vehicle for fraud." Wallace v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999); see also Crosse, 836 A.2d at 497.

The problem with this claim is that it does not contain allegations of "corporate wrongs" committed *by or through Ambulance Holdings*. The gist of the complaint is that the EEF Defendants and various individuals extracted the value from the Debtor entities and used that value to start new

entities, leaving the Debtors and their liabilities behind. Of sixteen claims for relief, this claim is the only one naming Ambulance Holdings as a defendant. It is not alleged that Ambulance Holdings was used to perpetrate a fraud, or that Ambulance Holdings was a sham entity. The trustee alleges that Ambulance Holdings is a "mere" holding company, but holding companies can certainly have a valid business purpose and are not sinister in and of themselves. The trustee contends that "if" any actions, strategies, or decisions are undertaken by Ambulance Holdings, those acts are controlled by and done for the benefit of the EEF Defendants, but no such acts, decisions, or strategies are alleged. Nor does the complaint allege that Ambulance Holdings was used as a shield, such that piercing the corporate veil is necessary to reach the EEF Defendants. To the contrary, EEF and EEF Partners are named as defendants in seven other claims for relief, and members of EEF or EEF Partners are named in ten claims. The court therefore concludes that this is not the type of situation to which a veil piercing claim was meant to apply, nor is it necessary in this case. The complaint does not contain contentions sufficient to state a claim for veil piercing as to Ambulance Holdings, and the motion to dismiss will be granted as to the seventh claim.

D.   Eighth Claim for Relief

The trustee's eighth claim for relief alleges fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548 and 550, as well as the Uniform Fraudulent Transfer Act, against Priority, Shoals, EEF, EEF Partners, Paul, Chandra and Gibson. The Defendants maintain that this claim should be dismissed as to EEF, EEF Partners, Paul, Chandra and Gibson because none of these defendants are alleged to be entities that received a transfer of property that could be avoided and recovered under § 550.[6]

---

[6]In their post-hearing supplemental brief filed with the court, the Defendants raise for the first time the argument that the trustee failed to adequately plead certain elements under § 548. The court believes these arguments to have been waived by the Defendants' failure to assert them in the motion

Dismissal of this claim has not been sought against Priority or Shoals.  The trustee contends that the Defendants are liable as "entit[ies] for whose benefit such transfer was made."  See § 550(a)(1).  The trustee alleges that Paul and Chandra served as directors of each of the Debtors and of Ambulance Holdings, are general partners of EEF and are members of EEF Partners, and control the business activities of EEF and/or EEF Partners.  Gibson was allegedly the CEO of each of the Debtors in 2013, and also owns Shoals and the trade name, Priority Ambulance, LLC.  Chandra became the CEO of the Debtors shortly before the petition date.  EEF and EEF Partners hold controlling interests in Ambulance Holdings, which in turn owns the outstanding shares of the Debtors.  The trustee asserts that EEF, EEF Partners, Chandra, Paul and Gibson took advantage of their controlling positions in the Debtors by forming new business ventures, Shoals and Priority, and by diverting the Debtors' tangible and intangible value into those new ventures, and leaving behind the defunct Debtors.

The traditional entity for whom the benefit of a transfer is made is a guarantor or debtor, yet § 550(a)(1) is not exclusive, and there may be other entities that receive the benefit of a transfer and from which the trustee may recover.  Terry v. Meredith (In re Meredith), 527 F.3d 372, 375-76 (4th Cir. 2008).  In determining who the trustee may recover from, the court must "look through the form of the transaction and determine which entity actually benefitted from the transfer."  Id. at 376 (quoting In re Compton Corp., 831 F.2d 586, 595 (5th Cir. 1987)).  On a motion to dismiss, the court must simply be able to plausibly infer that the Defendants are entities for whose benefit the transfers at issue were made.

---

to dismiss or at the hearing, but regardless, finds them to be without merit.

While the court has found some case law suggesting reticence to impose liability for fraudulent transfers upon the shareholders, directors and officers of a company, those cases involved determinations made after full trial or at least summary judgment. See Publ'g Co. Liquidating Trust v. Brown (In re Brown Publ'g Co.), Adv. Pro. No. 12-08193-reg, 2015 WL 1009177, at *8 (Bankr. E.D.N.Y. Mar. 4, 2015); Schechter v. 5841 Bldg. Corp. (In re Hanson), 341 B.R. 638 (Bankr. N.D. Ill. 2006).  On the contrary, the court has found authority allowing such claims to proceed against these types of defendants on motions to dismiss, see Anderson v. Bajaj (In re Med. Mgmt. Grp., LLC), 534 B.R. 646, 653 (Bankr. D.S.C. 2015), as well as after full trial.  See Official Comm. of Unsecured Creditors v. Fountainhead Grp., Inc. (In re Bridgeview Aerosol, LLC), 538 B.R. 477 (Bankr. N.D. Ill. 2015).  In Gibbons v. Stemcor USA, Inc. (In re B.S. Livingston & Co., Inc.), 186 B.R. 841 (D.N.J. 1995), the district court affirmed the bankruptcy court's refusal to dismiss the trustee's fraudulent conveyance claims against former principals of the debtor.  In light of allegations that the former principals orchestrated a fraudulent conveyance of the core of the debtor's business to another company in exchange for lucrative positions in the other company, it was plausible that they were entities for whose benefit such transaction was made.  Gibbons, 186 B.R. at 865; see also Reily v. Kapila (In re Int'l Mgmt. Ass'n), 399 F.3d 1288, 1293 (11th Cir. 2005) (citing to Gibbons, and stating that, "there is no obvious violence to the language in stating that the benefit of a lucrative position, like the benefit experienced by a guarantor, may be considered direct, ascertainable and quantifiable").

The court finds that this claim for relief has been sufficiently pleaded and should stand under the Rule 12(b)(6) standard.  Contained within the complaint are numerous allegations that the Defendants controlled virtually all aspects of the Debtors and caused the transfers of the Debtors'

assets in order to benefit the new ventures under their control or in whom they held controlling interests, namely, Priority and Shoals.  By diverting the resources of the Debtors into the newly formed ventures that they owned and controlled, the court can plausibly infer that the Defendants benefitted by being alleviated from the typical strains associated with developing new business, such as developing business models and strategies, hiring and training employees and management, acquiring tangible assets and marketing efforts.  In addition, the court can infer from the Defendants' actions that they benefitted by escaping the debt encumbering the Debtors.  It is alleged that the representatives of EEF and EEF Partners, which includes Chandra and Paul, comprise the majority of Priority and Shoals' boards of directers, and thus obtained gainful positions within the Priority and Shoals, escaping the financially burdensome horizon facing the Debtors.  It is also alleged that Gibson and his management team were hired by Priority and Shoals.  These are certainly benefits sufficient to withstand dismissal under Rule 12(b)(6).  The court must only find that a benefit to these Defendants has been plausibly alleged, and the court finds that this standard has been satisfied. The motion to dismiss the eighth claim for relief is denied.

E.    <u>Twelfth Claim for Relief</u>

The twelfth cause of action is titled "Breach of Contract or Agreement to Make Expansion Investment," and is brought against the EEF Defendants.  In this claim, the trustee asserts that during the process of the Debtors' expansion into new markets in Tennessee and Alabama, the Debtors' employees were concerned with decreased revenues associated with AAA, increased spending in the new markets, the relocation of vehicles to the new markets, and the hiring of high-salaried employees in the new markets.  The trustee alleges that in response to these concerns, the EEF Defendants reached a binding agreement with the Debtors in which the EEF Defendants would fund the

expansion to completion with a new investment of $7,500,000 to $10,000,000, while maintaining the Debtors' core business. According to the trustee, the EEF Defendants moved forward with the expansion but did not make the investment, leaving the Debtors to absorb the costs on their own. Thus, the trustee alleges that the EEF Defendants breached the agreement to make the investment, causing the Debtors to incur monetary damages.

The Defendants move to dismiss this claim, contending that it fails to adequately set forth the existence of a contract because the trustee did not allege any consideration for the purported promise to make an investment. However, the trustee asserts that consideration need not be specifically alleged to survive a motion to dismiss. Neither the trustee nor the Defendants addressed the appropriate choice of law for this claim; instead, both sides applied North Carolina law in making their arguments. Because the parties applied North Carolina law and did not raise a choice of law issue, and given that the elements of a breach of contract claim are likely universal, the court will apply North Carolina law.

In order to state a claim for breach of contract, the movant must show "(1) [the] existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). A contract, whether express or implied, requires "assent, mutuality, and definite terms." Schlieper v. Johnson, 195 N.C. App. 257, 265, 672 S.E.2d 548, 553 (N.C. Ct. App. 2009). There are two primary issues with the existence of the "contract" as alleged by the trustee: privity of contract and definite terms. First, the trustee, on behalf of the Debtor entities, is alleging the existence of a contract between individual employees of the Debtors and the EEF Defendants. It is clear that the trustee is alleging that the EEF Defendants agreed to help fund the expansion, but it is unclear what the Debtors agreed to do – with a great deal of stretching, this

25

claim could be construed to allege that certain individual employees agreed to keep working for the company, rather than leaving based on perceived inadequate resources for the expansion.  However, that would be an agreement between the EEF Defendants and individual employees acting on behalf of themselves, rather than between the EEF Defendants and the Debtor entities.  Thus, the alleged "contract" fails because there is no privity of contract between the Debtor entities and the EEF Defendants.

Second, even if privity did exist, the allegations do not constitute sufficient terms to create a contract.  As noted above, it is unclear what was required of the employees with whom the agreement was purportedly made.  The complaint does not specifically allege that as consideration for the EEF Defendants' promise to invest in the expansion, the employees agreed not to leave their employment with the Debtor entities.  Essentially, the complaint alleges that the EEF Defendants "agreed" to pay a certain amount of money toward the expansion.  The court cannot find a meeting of the minds as to any obligation of the subject employees from the complaint as it stands.  Because the obligation imposed upon the employees is a basic term and is not apparent from the face of the complaint, the breach of contract claim fails for lack of definite contract terms.  See e.g., Charlotte Motor Speedway v. County of Cabarrus, 230 N.C. App. 1, 748 S.E.2d 171 (N.C. Ct. App. 2013) (dismissing breach of contract claim where agreement at issue lacked basic terms fundamental to the existence of a contract, particularly because it was "wholly unclear what Plaintiffs were bound to do, or not do").  The court will therefore allow the motion to dismiss as to the twelfth claim for relief, but without prejudice to the trustee filing an amended twelfth cause of action for breach of contract within 20 days of the date of this order.

F.    Thirteenth Claim for Relief

The thirteenth cause of action, for fraudulent misrepresenation, is brought against the EEF Defendants, Kostuchenko, Chandra, Paul, Gibson, Blackburn, and Jewell.  The trustee alleges that Gibson, who became the CEO of each of the Debtors in 2013, and certain other Defendants expressly represented to a number of Debtors' employees that the EEF Defendants would make an expansion investment in the Debtor entities, and that this representation was made at the direction of several Defendants to further a strategy of using the Debtors' entities to benefit themselves, Shoals, and Priority.[7]  It is the trustee's position that the representation was made to explain to the Debtors' employees why the Debtors were making tremendous expenditures in connection with the expansion plan, and to induce the employees not to take action, inform others, or leave their employment.  The trustee further alleges that the Defendants made this representation knowing that the investment would not be made, or that it would only be made if loans could not be restructured.  According to the trustee, the employees justifiably relied on the representation, and were damaged because it kept them from having a true understanding of the Defendants' breaches of fiduciary duty and other wrongful actions.

The Defendants move to dismiss this claim, contending that the trustee lacks standing to raise the claim on behalf of third parties, namely, the Debtors' employees.  The Defendants assert that even if the representations were made to induce the employees to remain employed with the Debtors, the employees are not parties to this proceeding, and not every communication with an individual

---

[7] The gravaman of the trustee's complaint is that the Defendants usurped all of the Debtors' value and assets to benefit themselves and their new entities, Shoals and Priority, while leaving behind all of the Debtors' liabilities.

27

employee is a *de facto* communication with the employer. Under North Carolina law,[8] the elements of an action for fraudulent misrepresentation are: "(1) a false representation or concealment of material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive (scienter); and (4) upon which the injured person reasonably relied to his detriment." Pearce v. Am. Defender Life Ins. Co., 316 N.C. 461, 468 (N.C. 1986). Based on the allegations raised in the thirteenth claim, the court finds that the claim fails for lack of standing on the part of the trustee. Instead of alleging a misrepresentation made by the Defendants to the Plaintiff-Debtors, the complaint alleges that the Defendants made certain representations to underline employees of the Debtors. Thus, the complaint only alleges representations to third parties, rather than to members of the Debtor entities, and the claim cannot succeed. See, e.g., Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 754-55 (E.D.N.C. 2002) (declining to recognize claim based on representations to third parties, noting that "[t]he court has been unable to find any North Carolina cases in which a plaintiff has been permitted to recover on a fraud claim for misrepresentations that were made to third parties"). Although the trustee argues that for a corporate plaintiff to assert a fraudulent misrepresentation claim, the misrepresentations must necessarily be made to its officers, agents, and employees, this court is not willing to extend this notion to employees based on the allegations in the complaint. The complaint alleges that certain representations were made to induce some employees not to tell anyone of the Debtors' increasing costs and decreasing revenues, and not to leave their employment with the Debtors. The representations were therefore made to induce these employees to act for their own benefit, rather

---

[8] Neither the trustee nor the Defendants addressed the appropriate choice of law for this claim; instead, both sides applied North Carolina law in making their arguments. Because the parties applied North Carolina law and did not raise a choice of law issue, the court will apply North Carolina law.

28

than that of their employers, the Debtors.  The trustee cannot rely upon the representations made to

individual employees to support the cause of action.  Accordingly, the court will allow the motion

to dismiss as to the thirteenth claim for lack of standing.

G.     Sixteenth Claim for Relief

The sixteenth cause of action is brought against the EEF Defendants, Paul, Chandra,

Kostuchenko, Gibson, Blackburn, and Jewell.  The trustee alleges that the Defendants' actions as

a whole constitute unfair or deceptive acts or practices in or affecting commerce, i.e., that the

Defendants violated North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA").[9]

Specifically, it is argued that the Defendants caused the Debtors to transfer their valuable business

assets to Shoals and Priority by misrepresenting the transfer as an expansion, when it was actually

a transfer to competing businesses formed by the Defendants to take over the Debtors' property and

assets after forcing the Debtors into bankruptcy.  The Defendants move to dismiss this claim,

contending that in order for a business to sustain this type of claim, it must be in the marketplace

acting as a consumer, otherwise engaged in commercial dealings with the defendant, or a competitor

of the defendant, or the conduct complained of must have a negative effect on the consuming public.

According to the Defendants, although the trustee alleges commercial dealings with Shoals and

Priority, the trustee has not named Shoals or Priority as defendants subject to this particular claim,

and therefore has not alleged violations of the UDTPA as to Shoals or Priority.  The Defendants

---

[9] Neither the trustee nor the Defendants addressed the appropriate choice of law for this claim; instead, both sides applied North Carolina law in making their arguments.  Because the parties applied North Carolina law and did not raise a choice of law issue, the court will apply North Carolina law.

further assert that the Debtors are not competitors of the Defendants named in this cause of action, nor has the trustee alleged harm to the public, as opposed to the Debtors' employees.

The UDTPA prohibits both "unfair methods of competition," and "unfair or deceptive acts in or affecting commerce."  N.C. Gen. Stat. § 75-1.1.  To state a *prima facie* claim under the UDTPA, the trustee must show: "(1) [the Defendants] committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to [the Debtors]." Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (N.C. 2001).  The term "commerce" is defined as "all business activities, however denominated," other than certain professional services. N.C. Gen. Stat. § 75-1.1(b).  According to a recent review of relevant case law by the United States District Court for the Eastern District of North Carolina, the statute primarily provides relief to individual consumers, and "courts have viewed the rights of businesses to sue other businesses for violations of the UD[T]PA with a much more skeptical eye."  Exclaim Mktg., LLC v. DirecTV, LLC, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015).  The UDTPA only provides a business with a cause of action:

> where 1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, see Kuykendall, 322 N.C. 665, 370 S.E.2d 375; Winston, 314 N.C. at 97-98, 331 S.E.2d 677) [2]] the businesses are competitors, see ITCO Corp. v. Michelin Tire Corp., 722 F.2d 42, 48 (4th Cir. 1983), or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public.  See Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 519-20 (4th Cir. 1999).

Exclaim Mktg., 134 F. Supp. 3d at 1020.  As to commercial dealings, although the trustee characterizes certain transfers of property, assets, and employees as commercial dealings between

the Debtors and Shoals/Priority,[10] the complaint does not contain allegations of commercial dealings between Debtors and the Defendants named in this cause of action, i.e., EEF Defendants, Paul, Chandra, Kostuchenko, Gibson, Blackburn, and Jewell.  Nor does the complaint allege that the Debtors and the Defendants were competitors.  As to the effect of the Defendants' actions on the consuming public, the trustee conceded at the hearing that such conduct had not been alleged, but that he believed it could be sufficiently alleged if amendment of this claim is allowed.

Thus, at present the trustee's pleadings fall short of adequately alleging a cause of action under the UDTPA.  However, the court believes that given an opportunity to file an amended pleading, the trustee may be able to withstand a motion to dismiss.  Therefore, the court will allow the motion to dismiss the sixteenth cause of action, but without prejudice to the trustee filing an amended sixteenth cause of action within 20 days of the date of this order.

In conclusion, the Defendants' motion to dismiss is **ALLOWED** as to the fifth, seventh, eleventh, twelfth, thirteenth, fourteenth, and sixteenth claims in their entirety, and as to the fourth claim of defendant AAA only, with leave to amend the twelfth and sixteenth claims within 20 days of the date of this order.  The motion to dismiss is **DENIED** as to the eighth claim, and as to the fourth claim of defendants Coastline Care, ESAC, ESA, Marmac, and Transmed.

**END OF DOCUMENT**

---

[10] The court does not determine whether the allegations of transfers between the Debtors and Shoals/Priority sufficiently allege "commercial dealings" as it is unnecessary to do so at this time.