

**SO ORDERED.**

**SIGNED this 16 day of June, 2017.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# WILMINGTON DIVISION

| | |
|---|---|
| **IN RE:**<br>**AMERICAN AMBULETTE & AMBULANCE SERVICE, INC., COASTLINE CARE, INC., EASTERN SHORE ACQUISITION CORP., EASTERN SHORE AMBULANCE, INC., MARMAC TRANSPORTATION SERVICES, INC., and TRANSMED, LLC,**<br>      **DEBTORS** | **Case No. 13-07673-8-SWH** |
| **ALGERNON L. BUTLER, as TRUSTEE for DEBTORS,**<br>      Plaintiff,<br><br>      v.<br><br>**ENHANCED EQUITY FUND II, LP, EEF PARTNERS II, LLC, AMBULANCE HOLDINGS, LLC, MALCOLM KOSTUCHENKO, ANDREW PAUL, SAMARTH CHANDRA, BRYAN GIBSON, STEVE BLACKBURN, ROBERT JEWELL, PRIORITY AMBULANCE, LLC, and SHOALS AMBULANCE, LLC,**<br>      Defendants. | **Adversary Proceeding No. 15-00043-8-SWH-AP** |

## SUPPLEMENTAL OPINION REGARDING MOTION TO DISMISS CLAIM

The matter before the court is the motion, filed jointly by the defendants, to dismiss the eleventh claim for relief for unfair and deceptive trade practices as set forth in plaintiff's Second Amended Complaint. A hearing took place in Raleigh, North Carolina on January 17, 2017. On

March 31, 2017, this court entered an Order Regarding Motion to Dismiss finding that the plaintiff had sufficiently alleged a claim for unfair and deceptive trade practices. This supplemental opinion is intended to further explain the court's decision to deny defendants' motion to dismiss.

## BACKGROUND

On December 11, 2013, petitions for relief under chapter 7 of the Bankruptcy Code were filed by American Ambulette & Ambulance Service, Inc., Coastline Care, Inc., Eastern Shore Acquisition Corp., Eastern Shore Ambulance, Inc., Marmac Transportation Services, Inc., and Transmed, LLC (collectively, "debtors"). Based on the debtors' common ownership and affiliations, the cases were administratively consolidated on April 2, 2015, with American Ambulette & Ambulance Service, Inc. designated as the lead case. On November 13, 2015, the chapter 7 trustee, Algernon L. Butler, III, filed the complaint initiating this adversary proceeding against Enhanced Equity Fund II, LP, EEF Partners II, LLC, Ambulance Holdings, LLC, Malcolm Kostuchenko, Andrew Paul, Samarth Chandra, Bryan Gibson, Steve Blackburn, Robert Jewell, Priority Ambulance, LLC, and Shoals Ambulance, LLC (collectively, "defendants"). The complaint contains sixteen causes of action arising from the defendants' development of new business ventures, which the trustee alleges caused the debtors' financial demise and forced them into bankruptcy. The trustee, as plaintiff, filed a First Amended Complaint on December 11, 2015, and defendants filed a joint motion to dismiss all 16 claims in the First Amended Complaint on January 29, 2016.

Defendants' motion to dismiss the First Amended Complaint was granted in part and denied in part by order entered on September 28, 2016. The trustee filed his Second Amended Complaint on October 18, 2016, wherein he asserted eleven causes of action against the defendants based upon

2

allegations that they directed business away from the debtors and forced them into bankruptcy. On November 23, 2016, defendants filed their joint motion to dismiss plaintiffs' eleventh claim for relief, which alleges violations under the North Carolina's Unfair and Deceptive Trade Practice Act ("UDTPA"), arguing that the eleventh claim ("UDTPA claim") still fails to state a claim upon which relief can be granted.

In the Second Amended Complaint, the trustee alleged that the defendants' actions as a whole constitute unfair or deceptive acts or practices in or affecting commerce, *i.e.*, that the defendants violated UDTPA, in that the defendants[1] caused the debtors to transfer their valuable business assets to competing businesses formed by the defendants after defendants misrepresented to the debtors the transfers were for the purpose of expansion when, in fact, the purpose of the transfers was to force the debtors into bankruptcy. Defendants moved to dismiss the claim, contending that in order for a *business* to sustain this type of claim, the plaintiff business must be in the marketplace acting as a consumer or otherwise engaged in commercial dealings with the defendant, or must be a business competitor of the defendant, or the conduct complained of must have a negative effect on the consuming public; according to defendants, the trustee failed to plead facts sufficient to sustain any one of these three alternate prongs of an UDTPA claim.

## DISCUSSION

Defendants' motion is premised on Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. *See* Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). To survive a Rule 12(b)(6) motion, the

---

[1] The UDTPA claim is asserted against some but not all of the defendants: Enhanced Equity Fund II, LP, EEF Partners II, LLC, Andrew Paul, Samarth Chandra, Bryan Gibson, Steve Blackburn, Robert Jewell, Priority Ambulance, LLC ("Priority"), and Shoals Ambulance, LLC ("Shoals").

factual allegations of a complaint must "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see also Angell v. BER CARE, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 745-48 ( Bankr. E.D.N.C. 2009) (setting out a detailed analysis of *Twombly* and *Iqbal*). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss," and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678-79; *see also Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Significantly, while the truth of the facts is assumed, the court is not bound by "legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts.,* 213 F.3d at 180.

At issue here is North Carolina General Statute § 75-1.1(a), which provides that "unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To state a *prima facie* claim under the UDTPA, a plaintiff must show that "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001). As the *Dalton* court explained,

> [a] practice is unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. . . . The determination as to whether an act is unfair or deceptive is a question of law for the court. . . . As for whether a particular act was one "in or affecting commerce," we note that N.C.G.S. § 75-1.1(b) defines

4

> "commerce" inclusively as "business activity, however denominated." We also note that while the statutory definition of commerce crosses expansive parameters, it is not intended to apply to all wrongs in a business setting. . . . Moreover, "[s]ome type of *egregious* or *aggravating* circumstances must be alleged and proved before the [Act's] provisions may [take effect]." *Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 379 (E.D.N.C. 1993) (emphasis added).

*Dalton*, 548 S.E.2d at 711 (internal citations omitted). The UDTPA was "intended to benefit consumers, . . . but its protections extend to businesses in appropriate situations." *Id.* at 710 (internal citations omitted); *see also Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015) (noting that the term 'commerce' is limited to 'business activities' and "has been narrowed further in view of the statute's ultimate goal, 'to benefit consumers'"), *aff'd*, 2016 WL 7479315 (4th Cir. Dec. 29, 2016); *HAJMM Co. v. House of Raeford Farms, Inc.*, 403 S.E.2d 483 (N.C. 1991). Thus, "courts have viewed the rights of businesses to sue other businesses for violations of the UD[T]PA with a much more skeptical eye." *Exclaim Mktg.,* 134 F. Supp. 3d at 1020. More specifically,

> As derived from the case law, the statute gives a business a cause of action against another business only where: 1) the plaintiff-business is in the marketplace acting as a consumer or is otherwise engaged in commercial dealing with defendant, . . .[ 2)] the businesses are competitors, . . . or 3) the conduct giving rise to the cause of action has a negative effect on the consuming public.

*Id.* (internal citations omitted). Only one of these variations must be shown to state a cause of action, so the trustee needs to satisfactorily plead only one to survive defendants' motion to dismiss. The court will evaluate these factors in reverse order and discuss the "negative impact on the consuming public" prong first.

The trustee alleges that defendants' "expansion plan" included the transfer of the debtors' ambulances and ambulatory services into new markets to the detriment of the debtors' prior customers and the consuming public. Defendants, relying on the North Carolina Supreme Court's

5

opinion in *White v. Thompson*, argue that removal of a business from the marketplace is insufficient to create a cause of action under the UDTPA. *White v. Thompson*, 691 S.E.2d 676 (N.C. 2010). The facts in *White*, however, are readily distinguishable from the facts in this case. In *White*, the case "present[ed] the question [of] whether the General Assembly intended unfair or deceptive conduct among partners contained solely within a single business to be 'in or affecting commerce' such that a partner's breach of his fiduciary duty owed to his fellow partners violates North Carolina's [UDTPA]." *Id.* at 676. In that case, the jury found that one of the three partners in the ACE construction and welding business had diverted work away from the partnership and to a separate business venture, thereby breaching a fiduciary duty owed to plaintiffs by failing to act "fairly, honestly, and openly," in diverting the work. The trial court awarded treble damages under UDTPA's § 75-16. *Id.* at 678. On appeal, the North Carolina Court of Appeals reversed the damages award, agreeing with defendants that the "usurpation of partnership opportunities was not 'in or affecting commerce' as that phrase is used in the [UDTPA]," and that the conduct "had no impact on the marketplace." *Id.* at 678-79. On further appeal, the state supreme court agreed that defendant's conduct fell outside the definition of commerce, because the defendant "unfairly and deceptively interacted *only with his partners*." *Id.* at 680 (emphasis added). Internal business operations or disagreements within a single market participant are outside the scope of the UDTPA. *Id.*

In contrast to the factual predicate in *White*, in this proceeding, the conduct alleged by the trustee as having removed the debtors from the marketplace was not simply the closing of one business for replacement by another business in the same market; instead, it was the removal of the debtors and their services from an entire market without replacement, thus impacting consumers.

6

Specifically, the trustee alleges that the debtors operated in Bertie County, North Carolina, but after the transfer of ambulate vehicles to defendants' operations outside of North Carolina, Bertie County was "compelled to declare a state of emergency and obtain a temporary restraining order in an effort to prevent the shutdown of FirstMed Entities [the debtors] from interrupting the 911 emergency services that the FirstMed Entities had contracted to perform for that area." Second Amended Complaint ¶ 513. The adverse consequences as alleged by the trustee included the interruption and reduction of availability of medical transport services to members of the public, municipalities, hospitals, businesses, and convalescent facilities in the areas where FirstMed operated, including but not limited to the state of emergency in Bertie County. Assuming the truth of the factual allegations, had a citizen in Bertie County suffered a medical or life-threatening emergency, they could have been deprived of timely emergency medical assistance (but for the TRO obtained by county officials) as a result of defendants' actions. The court found that this alleged interruption of service and the action required by Bertie County to protect its citizens constitutes a negative impact on the consuming public, and would affect individuals, hospitals, and municipalities, and as such is not comparable to the more limited fact set in *White*. Having sufficiently alleged a negative impact on the consuming public, the trustee may maintain the UDTPA cause of action against defendants.

Because the allegations as pleaded by the trustee were sufficient to satisfy at least one of the factors under which a business may maintain a cause of action under the UDTPA – a negative impact on the consuming public – the court had no need to also consider whether the debtors were consumers, were otherwise engaged in commercial dealings, or were in competition with defendants.

Based on the foregoing, defendants' motion to dismiss the UDTPA claim in the trustee's Second Amended Complaint was **DENIED**.

**END OF DOCUMENT**